GEORGE ALMY *vs.* SHEFFEL REED & another.

The affidavit of the plaintiff is admissible to prove to the court the loss of a note declared upon, in order to let in secondary evidence of its contents, but it is not competent on the issue to the jury.

In this commonwealth, if the plaintiff, in a suit upon a lost note, tender to the defendant a sufficient bond of indemnity, he may recover, notwithstanding the note be not produced.

ASSUMPSIT on a promissory note dated May 4, 1846, for one thousand dollars, payable to the plaintiff on demand, with in-

terest, signed by Sheffel Reed as principal, and F. R. Whitwell as surety.

The plaintiff did not produce the note at the trial before *Shaw*, C. J., but stated that it had been fraudulently obtained from him by Reed, one of the signers, and he tendered and put on file a satisfactory bond of indemnity to the defendant, against any subsequent payment of the same. To prove the loss, the plaintiff offered the following affidavit:

" I, George Almy, of Dartmouth, in the county of Bristol, on solemn affirmation, declare, that I was the owner and holder of a promissory note, dated May 4, 1846, for the sum of one thousand dollars, signed by Sheffel Reed and F. R. Whitwell, and payable to my order on demand, with interest, after date, a copy of which is as follows:

" Fairhaven, May 4, 1846. $1,000. For value received, I, Sheffel Reed, as principal, and F. R. Whitwell as surety, jointly and severally promise to pay the order of George Almy, one thousand dollars with interest, after date.

" S. REED. F. R. WHITWELL."

Sundry small payments and indorsements having been made on this note, in the month of April, 1849, it was agreed by the said Reed and myself, that a new note should be given by the said Reed and Whitwell, for the balance due on the said one thousand dollar note, and to take up the same. In pursuance of this arrangement, on the eighteenth day of April, 1849, I applied to James Thornton, to cast the interest on the one thousand dollar note, aforesaid, which he did, and gave me a statement thereof. [Not material to this case.]

According to said computations, the amount due on the said note on that day, was $782.50. Said Reed then proposed to give a new note of himself and said F. R. Whitwell for the $700, and to pay the balance due on the thousand dollar note in cash. He wrote the note for $700 at that time, and took it for the purpose, as he said, of getting Whitwell's signature to it. A few days after, I called upon him, and he produced to me the said seven hundred dollar note, purporting to be signed by himself and the said Whitwell, and which I verily believed to be the true and genuine note of himself

and the said Whitwell; and I then received the same as the genuine note of himself and the said Whitwell, and the balance in cash, and thereupon gave up to him the said one thousand dollar note, and the said Reed received the same. And since then I have not seen the said one thousand dollar note. It has not been in my possession, nor have I any knowledge of the same, and I have reason to believe, and do believe, that the same is destroyed. The said one thousand dollar note has never been paid, nor has it been given up in any manner other than above stated."

Upon this affidavit two questions were reserved for the consideration of the whole court:

1. Whether this is competent evidence, and sufficient proof of loss, to let in secondary evidence ?

2. Whether it is competent evidence to go to the jury, to prove the facts stated in it ?

The plaintiff offered the testimony of Luther Potter, as follows: " I was present when the note in question was made, and one of like tenor was given to me at the same time. The name of the payee was left blank; I wrote Mr. Almy's name in it, and took it to him, and he gave me the money for it. I carried the money to Mr. Reed. At the expiration of the year, in May following, I went to get a year's interest due on my note, when I received a year's interest on Almy's note, and when I saw him I gave it to him. I have talked with Mr. Whitwell several times on this subject after Capt. Reed failed. He said something about this note. Said he pitied Almy. He said if this was all the forging of Capt. Reed's, he would pay it, and that would be an end of it. I said, I suppose you have security for this note, and his reply was, ' I don't say but what I have.' At another time speaking of security, he said, perhaps there would be some way to hitch it on." On cross-examination, witness said; " These notes were made at the same time. I received mine and George Almy's, and went with Reed to Isaac R. Gifford, and he got the money on his. I did look at the notes, knew Whitwell's handwriting, thought it his."

William Tucker testified as follows: " I had conversation

with Whitwell, after Reed left, about June, 1849, about a note for $700, held by George Almy. He looked at the note and said it was not his signature. I asked him if he did not give a joint note with Sheffel Reed, for $1,000, three or four years before, and he said he did, and referred to his book and stated the date. I asked him if he could not pay this to George Almy, as the $700 was nearly all he had except a small poor farm, and that he (Whitwell) was the party substantially relied upon. He said he could not do it in the present state of Reed's affairs, but he would think of it. Said he, shall I pay a note I never signed? I may have to pay the $1,000 note which is out. I told him he should have a good bond of indemnity. I asked if he did not take security for notes he had signed with Reed, and he said he had taken property to secure payment of notes, and I think he said he had it then in his possession. He made no distinction between this and other notes. He said he had no knowledge that the $1,000 note was not in the hands of Almy, until he was so informed by Almy. I asked him if he had signed a $700 note for Almy, and he said he had not. I asked if one had not been left at his counting-room to be signed, and he said no, and he referred to his clerk and inquired if he had seen such a note, and he said no." On cross-examination, the witness said; " He did not tell me he had received security for some notes and not for others. He did not tell me what kind of security he had received."

James Thornton testified as follows: " The $1,000 note was handed to me, for the purpose of making a computation of the amount due thereon in the spring of 1849. I deducted the payments indorsed, and computed the amount, according to the memorandum produced, and found due, $782.62, due April 18, 1849."

A verdict was taken for the plaintiff by consent, subject to the opinion of the whole court, upon the competency and sufficiency of the evidence, to warrant a verdict for the plaintiff, the court to draw such inferences from the evidence, as a jury ought to draw. If upon the evidence adjudged to be competent, the court are of opinion that the plaintiff is not

entitled to recover, the verdict is to be set aside, and the plaintiff becomes nonsuit; otherwise, judgment to be rendered on the verdict for the plaintiff.

*J. H. Clifford,* for the plaintiff.

*J. H. W. Page & J. C. Stone,* for the defendants.

BIGELOW, J. The affidavit of the plaintiff was clearly admissible to prove that the note was not in his possession, but had fraudulently passed into the hands of one of the defendants. It was competent, however, as evidence to the court, solely for the purpose of explaining the non-production of the note and to render secondary evidence of its contents admissible. Were it not for this well recognized exception to the general rule, which dispenses with the production of written documents upon the affidavit of the party as to their loss or destruction, there would in many cases be no means of recovering upon notes, lost by accident, or obtained from the possession of the holders by fraud. The exception is founded on the necessity of the case, in order to prevent a failure of justice, and to allow a party to prove his case by the only competent evidence within his reach. The admission of the affidavit of a party as evidence to the court in such cases does not contravene the rule that a party shall not testify in his own cause, but only permits him to prove his case by the use of other evidence. The affidavit was, therefore, competent as evidence to the court, but was inadmissible as proof of the case to the jury. Chitty on Bills, 11 Amer. edit. 265, n. 1; Cowen & Hill's notes to Phil. Ev., part 2, n. 220, 408, 409; 1 Greenl. Ev. § 558; *Davis & wife* v. *Spooner,* 3 Pick. 284, 287; *Donelson* v. *Taylor,* 8 Pick. 390.

The only remaining question is, whether, excluding the affidavit, there is sufficient evidence in the case to warrant a jury in finding a verdict for the plaintiff for the amount claimed as due upon the note. Without going into a minute examination of the testimony, the facts proved, and the inferences fairly deducible therefrom, may be thus stated. A note signed by the two defendants, the said Reed as principal, and Whitwell as surety, bearing date May 4, 1846, for one thousand dollars, payable to the plaintiff on demand

36 *

with interest, was delivered to the plaintiff by the defendants' agent, for which he advanced the money to them; this note remained in the plaintiff's possession till April 18, 1849; sundry payments of principal and interest were made, and indorsed thereon at different times between the day of its date and said eighteenth of April; on the last-named day a computation of the amount due on said note was made at the request of the plaintiff, when the balance was found to be seven hundred eighty-two dollars and sixty-two cents; on the same day, a new note was given to the plaintiff signed by said Reed, and purporting to be signed by said Whitwell, for the sum of seven hundred dollars; soon after and before June, 1849, said Reed failed and absconded, having forged the signature of Whitwell to other notes; the note for seven hundred dollars, dated April 18, 1846, was presented by the plaintiff, immediately after said Reed had absconded for payment, to said Whitwell, who then pronounced his signature thereto to be forged; until the presentation of said note alleged to be forged, said Whitwell did not know that the original note for one thousand dollars had been taken up by said Reed by the substitution of another note, or in any other manner; and there was no proof of any other dealing or transaction between the parties having ever taken place, except what grew out of the original note for one thousand dollars. From these facts, and the inferences deducible therefrom, we are very clearly of the opinion, that a jury would have been warranted in finding that the original note for one thousand dollars, signed by the two defendants, was taken up by Reed, by the substitution therefor of the note for seven hundred dollars on the 18th of April, 1849, bearing the forged signature of Whitwell; that the plaintiff took it, believing the signature to be genuine, and upon the faith of the security of the name of said Whitwell, and that, thereby, the plaintiff was defrauded by said Reed, and induced, by false pretences, to give up to him said original note. This being so, it follows that the plaintiff, having received the note for seven hundred dollars on the faith that it was the valid note of both, has a right to treat it as a nullity and resort to the original

contract for which it was fraudulently substituted. *Leonard* v. *Trustees of First Congregational Society in Taunton,* 2 Cush. 462. By the well-settled rule in this commonwealth, the plaintiff, having tendered and filed a bond with satisfactory sureties, to indemnify the defendants against any further claim on said original note for one thousand dollars, is entitled to judgment for the amount due thereon. *Fales* v. *Russell,* 16 Pick. 315.                    *Judgment for the plaintiff.*