HENRY C. GOSLEE, EXECUTOR, *vs.* EFFIE H. ROWE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 9th—decided December 8th, 1931.

*Charles M. Lyman,* for the appellant (defendant).

*David Cramer,* with whom, on the brief, was *Thomas F. Ryan,* for the appellee (plaintiff).

(1)

AVERY, J. The answer admits that August 24th, 1908, Ella E. Billson owed John G. Bennett, the plaintiff's decedent, $1200, evidenced by her note for that amount; that to secure the payment thereof, she mortgaged certain premises in the town of Morris; that the mortgage was duly recorded; and that thereafter, October 10th, 1921, Ella E. Billson conveyed the premises to the defendant, who assumed and agreed to pay the mortgage. The answer denies that the note is owned by the plaintiff executor and is due and unpaid; and the defendant, by way of cross-complaint, alleges that Bennett, in his lifetime, with intent to make a gift to the defendant, destroyed the note and mortgage. The only matters in dispute between the parties at the trial were whether the plaintiff was the owner of the note, which was not produced, or whether, as alleged in defendant's cross-complaint, the same had been destroyed by Bennett in his lifetime with intent to make a gift to the defendant.

The trial court has found that on the Billson land, there was a dwelling-house conducted as a boarding and lodging place. In May, 1918, the defendant rented these premises from the owner, and since that date has operated thereon, from May to November in each year, a hostelry known as "Bonny View Lodge," at which meals and lodging were provided for guests. At the time the defendant rented the premises, Bennett resided in a house owned by him across the road. He did some farming and gardening and produced milk. He had a housekeeper who lived with him until 1924, when she died. At times, he engaged other help, and during the winters lived in New Milford. Soon after the defendant commenced to operate "Bonny View Lodge," she became acquainted with Bennett, procured milk from him, and he became a frequent visitor

at her place. At times, when he was alone, she furnished meals to him; did mending and laundry work for him and other services for which, at times, she received no compensation. After his housekeeper died in 1924, the defendant rendered such service more frequently, and one summer took care of his milk business for him.

In 1921, Ella E. Billson offered "Bonny View Lodge" for sale and Bennett advised the defendant she would make no mistake to buy it, and offered her the money for the purchase. In October, 1921, the defendant purchased the premises, which were conveyed to her by deed dated October 10th, 1921, and duly recorded, wherein the defendant assumed and agreed to pay the $1200 mortgage. October 20th, 1921, the defendant executed and delivered to Bennett a mortgage on the premises to secure a note for $1600, the amount Bennett had loaned her as part of the purchase price; and in that mortgage, the defendant assumed and agreed to pay the prior mortgage for $1200. Beginning in October, 1922, the defendant paid Bennett interest on both mortgages by one check for $140. These payments were made about the 10th of October in each year. Shortly after making payment of interest October 10th, 1924, Bennett remarked to defendant: "I am not going to take any more interest." No explanation was made or asked in reference to this remark, and nothing was said about either note or mortgage. In October, 1925, the defendant asked Bennett if he wanted his interest, and he remarked that he could use it. Thereupon, the defendant handed him a check, which she had ready, in the sum of $140, the amount of the interest on both notes, and he accepted it; and, thereafter, until and including October, 1927, the defendant handed him a like check for $140, which he accepted and retained

for his own use. In October, 1928, the defendant, after Bennett's death, called upon the plaintiff to make interest payments, and when she found that plaintiff did not have the mortgage and note for $1200, she refused to pay interest thereon, but did pay interest on her note of October 10th, 1921.

Bennett was a man of eccentric character and few words and friends. On many occasions, when defendant rendered some service to him, he remarked: "I thank you until you are better paid." In the fall of 1924, after defendant's son had taken Bennett to Litchfield, on a certain occasion the latter said to the defendant: "You know what I have done for the Fultons and when the old man dies, you will find out I have been good to you." In his will, Bennett devised to the Fultons certain real estate, but gave nothing to the defendant.

Bennett died July 11th, 1928, at the age of eighty to eighty-two. Approximately two months before his death, he executed and delivered to Henry C. Goslee, the plaintiff, in his individual capacity, a power of attorney in writing, empowering him to handle Bennett's business affairs. This power of attorney was executed and delivered in the town clerk's office. After his appointment, Goslee visited Bennett's house, and the latter handed him certain papers with the statement that they were all he had. Subsequently, Goslee examined the papers before Bennett's death and did not find the mortgage and note for $1200 among them. Nothing was ever said between them about the note and mortgage. The papers delivered to Goslee included the note and mortgage for $1600 given by defendant to Bennett when she purchased the property. After Bennett's death, the plaintiff made an exhaustive search among his papers and effects for the note and mortgage of $1200, but was unable to find

them. The note was seen by defendant's son at the time of the transfer of the mortgaged property to the defendant in 1921. The plaintiff, Goslee, has never seen the note and mortgage for $1200 and has no knowledge of their whereabouts.

The defendant at no time has paid the note and mortgage of $1200 and is now in possession of the premises as owner of the equity. The mortgage still continues of record and has not been released; and, so far as appeared, the note and mortgage were, at the time of Bennett's death, in full force and effect. At no time did he inform the defendant that he had made or intended to make a gift of the note or mortgage, or that he intended to destroy or had destroyed them with intent to make a gift to her. After the death of Bennett, the defendant filed a claim against his estate for all services rendered during his lifetime, which was allowed, and she received an allowance from the commissioners appointed by the Court of Probate.

Upon these facts, the trial court concluded that no reasonable inference could be drawn that Bennett, during his lifetime, destroyed the note and mortgage for $1200 with intent to make a gift to the defendant; and that it was a reasonable inference that the note had been lost or misplaced by Bennett during his lifetime; and rendered judgment for a strict foreclosure, finding the amount due as $1200 with interest.

As the answer admitted the indebtedness, the giving of a note and its terms, a presumption arose that the condition thus created continued to exist. *Pettus* v. *Gault*, 81 Conn. 415, 422, 71 Atl. 509; *Gray* v. *Finch*, 23 Conn. 495, 513; *Sullivan* v. *Shea*, 32 Colo. App. 369, 371, 162 Pac. 925, 927. Nor does the plaintiff's case rest wholly on this presumption. The defendant paid

interest to Bennett on the note until his death, and he received the same, and the note itself was seen by defendant's son in 1921, at the time of the transfer of the property to the defendant. The plaintiff, it is true, who received a power of attorney from Bennett two months before his death, never had possession of the note, and was unable to find it among Bennett's effects. The note was a nonnegotiable note; confessedly it had never been paid; and in view of all the circumstances the trial court was justified in drawing an inference that it had been lost or mislaid by Bennett during his lifetime. This distinguishes this case from *Beers* v. *Hawley,* 3 Conn. 110, and other like cases, some of which are cited by the appellant, where no evidence was given to account for the nonproduction of the note at the trial. The right, however, of the plaintiff to recover is not defeated by the loss of the instrument. "A bill or note is not a debt; it is only primary evidence of a debt; and where this is lost, impaired or destroyed bona fide, it may be supplied by secondary evidence." *Bank of United States* v. *Sill,* 5 Conn. 106, 111. "The loss of a bill or note alters not the rights of the owner, but merely renders secondary evidence necessary and proper." *Hinsdale* v. *Miles,* 5 Conn. 331, 334; *Almy* v. *Reed,* 64 Mass. (10 Cush.) 421, 425. From the facts found, the trial court was justified in concluding that the note was lost; and that the debt had not been paid; and in rendering judgment accordingly.

The instrument described in the complaint was nonnegotiable. Under these circumstances, the defendant was not entitled to require the plaintiff to give an indemnity bond against its appearance in the hands of a third party. *Hoil* v. *Rathbone,* 98 Mich. 323, 325, 57 N. W. 183; *Wright* v. *Wright,* 54 N. Y. 437, 441; *Citizens National Bank* v. *Brown,* 45 Ohio St. 39, 44,

11 N. E. 799; *Hopkins* v. *Adams*, 20 Vt. 407, 413; 2 Daniel, Negotiable Instruments (6th Ed.) § 1481.

There is no error.

In this opinion the other judges concurred.