[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action seeking a judgment of strict foreclosure, immediate possession, a deficiency judgment, the appointment of a receiver and an order of ejectment was returned to the Judicial District of Middlesex on January 15, 1993. The original complaint asserted that the defendant Charles A. Marland became indebted to the Connecticut National Bank on November 2, 1989, in the principal sum of one hundred fifty thousand ($150,000) dollars as evidenced by a custom credit line agreement and that to secure its repayment he mortgaged to the bank premises known as 175-4 Elm Street in the Town of Old Saybrook.
The plaintiff successor in interest to Chester Bank alleged that it is the owner and holder of the note which has a balance of $143,952.72, which is due and payable, that it made a written demand for payment of said demand note, which the defendant has neglected and refused to pay. The plaintiff also claimed defendant Charles A. Marland has defaulted in the payment of principal and interest on a variable interest rate commercial note and mortgage dated August 15, 1988, payable to Chester Bank in which the Connecticut National Bank is the current holder of said note and mortgage. Said default constitutes a default under this note and mortgage.
The complaint alleged that the defendant, Charles A. Marland, is the record owner of title to the premises and is currently in possession of the premises. The sheriff's return dated January 12, 1993, indicates that service of the complaint and lis pendens was made on defendant on that date. The defendant Charles A. Marland appeared pro se, filed an answer, a special defense and three counterclaims.
On February 5, 1993, Susan C. Marland filed an appearance form describing herself as a pro se third party defendant. In her motion to be made a party filed on the same date, Mrs. Marland alleged that she acquired an interest in the subject property prior to the filing of the lis pendens. The court granted this motion on or about February 22, 1993.
On October 27, 1995, the plaintiff, now the Cadle Company of Connecticut, Inc., filed a second amended complaint citing in Susan Marland. Paragraph 6 alleged that on January 21, 1993, the defendant Charles Marland transferred by quitclaim deed to himself and the defendant Susan C. Marland all of his interest in the premises [175-4 Elm St., Old Saybrook] which quitclaim deed CT Page 8423 is dated and recorded January 21, 1993.
This complaint asserted that on January 11, 1993, Connecticut National Bank changed its corporate name to Shawmut Bank Connecticut, N.A.; that on January 27, 1993, Shawmut assigned all of its right, title and interest in and to the note and the mortgage to GTT Corp. Trustee of Onyx Properties Realty Trust ("GTT") pursuant to an assignment of mortgage dated said date and recorded in Vol. 305 at page 84 of the Old Saybrook Land Records; and that as of February 18, 1994, GTT assigned all of its right, title and interest in and to the note and mortgage to the Cadle Company of Connecticut, Inc., the plaintiff in this action, pursuant to an assignment of mortgage dated as of said date; and that plaintiff is now the owner and holder of the note and mortgage. These allegations were subsequently proven by Exhibits D, E and F.
On or about April 15, 1993, the court had permitted GTT, as trustee of Onyx Properties Realty Trust, to be substituted for Connecticut National Bank as plaintiff in this action.
Subsequently, on or about August 16, 1994, the court permitted the Cadle Company of Connecticut to be substituted as plaintiff in this action in place of GTT Corp., trustee of Onyx Properties Realty Trust, and permitted "Cadle" to file an amended complaint.
On or about January 17, 1995, the plaintiff, the Cadle Company of Connecticut, obtained a default against Charles A. Marland for failure to comply with Practice Book § 147. Earlier on January 13, 1995, the defendant Charles A. Marland had been defaulted for failure to plead. On June 14, 1994, the matter was transferred from Middlesex to the Judicial District of Meriden. In September, new counsel appeared for the defendant Charles A. Marland. Counsel filed revisions to Marland's counterclaims and moved to strike this case and a companion case, CV95-0249405, from the trial list. Defendant Charles A. Marland also asked the court to relieve him of the default entered against him on January 17, 1995 in the Judicial District of Middlesex. The court denied this motion on October 25, 1995 and also refused to strike the case from the trial list.
Thereafter, the defendant Susan C. Marland filed an answer and four special defenses to the second amended complaint of the Cadle Company of Connecticut. The pleadings were closed on CT Page 8424 November 9, 1995 when plaintiff replied to defendant Susan Marland's special defenses.
This case went to trial on December 6, 1995 and was concluded on December 15, 1995. It was tried along with a companion case, CV95-0249405, Connecticut National Bank vs. Charles A. Marland.et al, which involved the same parties to a different note and mortgage, dated August 15, 1988. The plaintiffs referred to this lawsuit in paragraph ten of its second amended complaint and claimed that defendant's default in the variable interest rate commercial mortgage note dated August 15, 1988 constituted a default under the note and mortgage of November 2, 1989. The court filed a memorandum of decision on February 26, 1996, in Case No. CV-0249405, involving the note and mortgage dated August 15, 1988. In its memorandum of decision, the court found that the August 15, 1988 note and mortgage was in default as of October 28, 1992, and was not cured prior to December 4, 1992, prior to the date the foreclosure actions were commenced on both these notes on or about January 12, 1993.
The court deferred rendering a decision in the subject case because the defendant Charles A. Marland contended that the absence of the original note was a bar to plaintiff's recovery. The evidence revealed that the Custom Credit Line Agreement dated November 2, 1989, was in fact missing. Plaintiff instead submitted and the court admitted a copy of this document together with an affidavit of lost note. Attached to the copy was an allonge endorsing the note over to the Cadle Company of Connecticut, the plaintiff herein. (Exhibit C).
Defendants argued extensively that the Uniform Commercial Code §§ 42a-3-203(a) and 42a-3-309 prohibited a foreclosure where delivery of the note cannot be proved. Defendant's counsel called the court's attention to a superior court case on appeal,New England Savings v. Bedford Realty Corp., CV92-0241735, where a similar argument had been made but was rejected by the trial court and suggested the court defer its decision until the Supreme Court decided the issue. Counsel for the plaintiff concurred with defendant's suggestions. Accordingly, the court deferred its decision. In August of 1996, the Supreme Court released its decision on Bedford Realty ruling that where a plaintiff chose the equitable remedy of foreclosure of the mortgage rather than the legal remedy on the note, the fact that plaintiff might never have possessed the allegedly lost promissory note is not fatal to its foreclosure of the mortgage. CT Page 8425New England Savings Bank v. Bedford Realty, et al, 238 Conn. 745,752 (1996).
Although the defendant Charles A. Marland had been defaulted, the court permitted him to challenge the foreclosure with reference to the Uniform Commercial Code, §§ 42a-3-203(a) and42a-3-309; to insist that equity required plaintiff to prove all allegations of its complaint; to claim the absence of "clean hands" on plaintiff's part because it arguably purchased the note and mortgage for a substantial discount. Cadle paid Shawmut $2,400,000 for a package of notes including this one which had total outstanding balances of $19,456,491.16, and to claim that evidence offered in proof of the debt was insufficient and/or inadmissible.
The court considered these arguments and rejected them. The court determined that the Uniform Commercial Code §§ 42a-3-203a and 42a-3-309 was inapplicable to this equitable proceeding of foreclosure. The court also found that secondary evidence was appropriate to prove the existence of the lost note. In addition, the plaintiff satisfied the court that it had established standing to bring this action of foreclosure by proving its chain of title through various assignments that a default existed on the note at the time demand was made on Charles A. Marland and that the debt due at the time of default was $143,952.72 (Exh. G). Subsequent testimony established that the amount of the debt including accrued interest but not late charges was $184,125.60 as of December 5, 1995.
The evidence of debt, the principal balance outstanding on the note when demand was made was established through the default letter (Exhibit G), the note sale agreement (Court Exhibit 1), testimony of Douglas Mainero and testimony of Susan C. Marland. This information came from Shawmut's computer records and was a business record. The testimony of Mr. Mydarski and Mr. Mainero established the validity of these records.
The defendant Susan Marland who was not obligated on the note and who acquired her interest subsequent to the institution of these proceedings filed an answer generally putting the plaintiff to the proof of the essential allegations of its foreclosure complaint. In addition, she filed four special defenses all of which were denied by the plaintiff. The first special defense accused the plaintiff of interminable delay in the prosecution of this foreclosure to her substantial prejudice. CT Page 8426
The second special defense claimed that the equitable doctrine of laches should apply. Defendants' third special defense claimed the plaintiff breached an agreement with defendants' co-owner of the subject property whereby this action would be resolved. In her fourth special defense, the defendant alleges bad faith on the part of the plaintiff Cadle in its purchase of the note and mortgage at a substantial discount, the breach of an agreement with the co-owner and the delay in prosecution which resulted in an impairment in the value of her interest.
Charles A. Marland did not appear at the trial; hence, there was no direct evidence of any agreement to resolve. On the contrary there was evidence from a witness, Doug Mainero, that Mr. Marland indicated he could not negotiate because he was involved in a divorce action with Susan C. Marland. After considering all the evidence, the court can find no evidence of unusual delay in the prosecution of this case by the plaintiff. The case could not proceed normally in the Middlesex District due to the recusal of many judges either because of the pending divorce or because Susan Marland at one time worked in some capacity in the office of victims' advocate.
Neither defendant challenged the testimony of the plaintiff's appraiser that the value of the subject property was $450,000, as of February 10, 1995. The defendant bore the burden of proof on the question of impairment of value the court finds she did not sustain her burden. The court finds that the defendant Susan C. Marland has failed to prove her special defenses.
As noted in the companion case, the court cannot determine the exact price Cadle paid for this note and mortgage from the evidence at hand. There is obviously a good deal of risk in liquidating unperforming loans. Equating risk with what appears to be a substantial overall discount is a market decision not a judicial one.
Inasmuch as the value of the property, $450,000, exceeds the debt found by the court, $184,125.60, a judgment of foreclosure by sale is ordered. Sale is to take place on the premises on Monday, December 16, 1996, at 12 Noon. John Carta, Post Office Box 209, Essex, Connecticut, is appointed the committee for the sale. Christopher Buckley, Post Office Drawer 460, 338 Main Street, Niantic, Connecticut, is designated as the appraiser. The CT Page 8427 appraiser shall make a return of his appraisal on or before November 25, 1996. A deposit of $50,000 is required. The deposit is to be forfeited if purchaser is unable to close within thirty days of court approval of the sale.
The plaintiff is not required to make a deposit. The committee shall place a sign on the premises on or before November 25, 1996, and arrange for advertising in the New Haven Register and the New London Day on Sunday, December 8, 1996, and December 15, 1996, and once during the weeks of November 25, 1996, and December 2, 1996, and arrange liability insurance for the premises for the day of this sale. The court allows a title search fee of $150, an appraisal fee of $1200, and for an attorney's fee of $9000.
Dorsey, J. Judge Trial Referee