[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
The plaintiff, Willow Funding Co. L.P. ("Willow"), the holder of a note and second mortgage assigned to it by the Federal Deposit Insurance Corporation ("FDIC"), seeks a strict foreclosure of that mortgage, a deficiency judgment, money damages against the defendant guarantors, Arthur Collins and Arthur D. Emil, and other relief.
The defendant Grencom Associates, a Connecticut Limited Partnership, ("Grencom") is the owner of certain commercial property consisting of two office buildings in Greenwich. On June 13, 1988 Grencom borrowed the sum of $1,500,000 from Citytrust, a Connecticut bank, securing the loan by a second mortgage on the property. When it matured on June 15, 1991, the defendants were unable to pay the loan. Thereafter, Citytrust failed and its assets were taken over by the FDIC as receiver. In turn, the FDIC engaged Consolidated Assets Recovery Corporation ("CARC") to service the loan along with a number of other loans from failed institutions.
There came a time, in 1994, when CARC offered to sell the Grencom loan to the defendants at a discount price of $500,000, although CARC was carrying the loan on its books at a principal balance of $1,423,989.71 plus interest and late fees. The price of $500,000 was to be in satisfaction of the note as well as the individual guarantees of Collins and Emil. When the defendants were unable to raise the necessary monies to purchase the loan, CARC offered three extensions of time to them in order to try to obtain the financing. In March, 1994, the defendants had applied to a Liberty Bank for financing to fund the $500,000 buyout as well as to pay off a first mortgage to the Equitable Life Assurance Society. After Liberty Bank rejected the loan application in the summer of 1994, the defendants turned to an old business associate for advice about obtaining a loan for CT Page 12553 $500,000 to buy its debt as CARC had offered. The latest extension offered by CARC for the deal to be done was October 15, 1994.[1] The business friend, a William Stern, introduced them to the plaintiff as a possible source of second mortgage money to finance a deal with the government. Apparently, Willow and the defendants came to terms on the substance of the transaction after the defendants supplied the plaintiff with financial statements, leases and other required information and after the plaintiff had inspected the real estate. What never was agreed upon were the terms of the guarantee required of the two individual defendants.
As a result of the disagreement over the terms of the guarantee, the loan arrangement never materialized, and the defendants were unable to purchase the mortgage from CARC. Instead, the plaintiff went directly to CARC and placed a sealed bid for the purchase of a pool of bad loans, of which the Grencom loan was one. After becoming the successful bidder and being assigned the Grencom loan by the FDIC, the plaintiff initiated this foreclosure action.
The plaintiff claims, as holder of the note, that it remains unpaid, it has a balance of $1,907,384.63 including interest and late charges, and presented testimony of an appraiser who valued the property at $3,200,000.[2]
The defendants defend against this claim raising, in substance, two arguments. The defendants claim (1) the plaintiff has failed to prove the amount of its debt by competent evidence and (2) the plaintiff breached a fiduciary relationship established with the defendants, and this court, acting as a court of equity must not enforce the obligation because of the plaintiff's wrongful conduct. The first issue for the court, then, is whether the plaintiff has proven the amount of its debt.
In its efforts to prove the debt, the plaintiff presented several witnesses. David Struss, an attorney, was general counsel to CARC during the period that the subject loan was in that institution's portfolio. He testified that he was familiar with the principal balance of the Grencom loan, and would be familiar with any payments made during that period. Indeed, a loan history card kept by CARC was offered through this witness and allowed by the court. The card showed a principal balance due on the loan of $1,423,989.71 at the time CARC took over the loan from Citytrust.[3] The witness offered no testimony as to how the CT Page 12554 loan was carried on the books and records of Citytrust, nor were any such documents produced.
Joanne Haines was an employee of CARC since its inception in 1991, and had the Grencom loan under her supervision. She was able to testify that she was familiar with the record keeping of CARC, that there were no substantial inaccuracies therein, and that they were reliable. Although she testified that she had worked at Citytrust prior to CARC, she did not testify as to Citytrust's books and records, how they were kept, or whether the bank records were reliable and accurate. There were no computer or manually generated records of Citytrust of any kind offered into evidence, and no evidence that the $1,423,989.71 principal balance was accurate and reliable when it was used as the opening balance on the books of CARC.
The plaintiff also called to testify the accountant for the defendants, George Henderson, through whom the balance sheet of the defendant Grencom was offered and admitted into evidence, as well as certain of Grencom's income tax returns. These documents of the defendants carried as the principal balance a figure the same as the opening balance carried on the books of CARC. Henderson testified that this figure was supplied by the bank, that he never audited the books to verify the balance, and that in fact the records were handed down to him from the prior accountant for the defendants.
Jodi Breithart, a vice-president of Willow, testified that her calculation of the debt of the defendants was based upon the defendants' financials and her review of CARC's records. From these sources she used a principal balance of $1,423,989.71, calculated the interest and late charges, and derived a total debt of $1,907,384.63 as of February 25, 1997, which the plaintiff seeks to recover through this foreclosure proceeding.
The plaintiff has the obligation to prove its debt by competent evidence. Needless to say, Willow cannot prove its debt by relying upon hearsay records of another institution. A witness who does not have personal knowledge of the contents of a file relied upon to prove a debt will have his or her testimony declared inadmissible for that purpose. New England Savings Bankv. Bedford Realty Corp., 238 Conn. 745, 680 A.2d 301 (1996). The witness must be able to testify that he or she is familiar with how the records are generated[4] and that the records are accurate. Without such, testimony as to a bank's records lacks a CT Page 12555 proper foundation and constitutes hearsay. In this case, no records of Citytrust, the original creditor bank, were introduced into evidence. Furthermore no witness, familiar with the bank's record keeping practices testified as to how the records were kept or as to their accuracy. The loan history card concerning the status of the loan kept by CARC began with a principal balance taken from the files of Citytrust, without any evidence that the balance of $1,423,989.71 was correct. Willow's calculation of the debt was arrived at by applying an interest rate to the principal balance taken from CARC's files. Thus, there were no bank records and no testimony sufficient to prove plaintiff's debt.
In apparent recognition of this flaw in its case, Willow relied substantially on the balance sheet and tax returns of Grencom to prove its debt. Because the said defendant carried the principal balance on its books at $1,423,989.71, the plaintiff contends that it constitutes an admission by the defendants that it is a correct balance.
"The defendant's corporate ledger sheets acknowledging indebtedness are admissible as admissions of a party opponent whether or not they qualify under the business entry exceptions to the hearsay rule." Ferris v. Polycast Technology Corporation,180 Conn. 199, 204, 429 A.2d 850 (1980). Nevertheless, ". . . where evidence is introduced showing an apparent admission of a party out of court, he is entitled to explain the circumstances so that the trier can properly evaluate it . . . the principle is the same as that which permits a witness to explain the testimony he has given in court." Kuzda v. Stone, 155 Conn. 194, 198230 A.2d 559 (1967). Evidential admissions are relevant to the proof of a matter, but are not conclusive. Renkiewicz v. Renkiewicz,180 Conn. 114, 118, 429 A.2d 630 (1980). The probative value of such statements must depend on the circumstances of each case.Stitham v. LeWare, 134 Conn. 681, 684, 60 A.2d 658 (1948).
In this case, the court cannot assign sufficient force to the admission to carry the plaintiff's burden of proof of the debt. The plaintiff's witness explained that the figure carried on the defendant's books was the figure supplied by Citytrust. He inherited the figure from a prior accountant, and he performed no audit or other procedure to verify its accuracy. To the court, then, this figure appears no more reliable or accurate than that carried by CARC and Willow, since all are based upon the balance shown on Citytrust's books for which there was no competent CT Page 12556 evidence whatsoever.
In summary, the court finds that the plaintiff has failed to prove its debt by a preponderance of the evidence. It was incumbent upon the plaintiff to prove that the amount of the debt owed to Citytrust at the time of the bank's failure and the takeover of the loan by the FDCI. As to that issue, the testimony of each of the plaintiff's witnesses was hearsay. Nor was any documentary evidence of the amount of the loan during Citytrust's stewardship offered to the court. The amount of the loan carried on the defendant's books was based upon the same hearsay evidence, and is not enough to convince the court that the correct balance of the loan is that which the plaintiff claims.
In view of this finding, it is unnecessary for the court to address the defendants' special and affirmative defenses, nor need it afford the defendants relief on the counterclaim. Judgment may enter for the defendants on the complaint. So ordered.
D'Andrea, J.