******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELGO, J., concurring in part. I fully agree with and join parts I A, II and III of the majority opinion. I respectfully disagree with the majority's conclusion in part I B that the habeas court improperly sustained the objection of the respondent, the Commissioner of Correction, to certain testimony of the petitioner, Randy A. Wright, on hearsay grounds. Accordingly, I depart from the majority opinion in that limited regard.

In his principal appellate brief, the petitioner claims that the habeas court's decision to sustain the respondent's objection on hearsay grounds "was clearly wrong." On the record before this court, I would conclude that the petitioner has not demonstrated that the court committed error with respect to that evidentiary ruling.

The petitioner's claim is predicated on a colloquy that transpired at the habeas trial on May 3, 2023. That colloquy began with the petitioner's counsel asking the petitioner about a conversation with Attorney Vincent Fazzone, his criminal trial counsel. The following colloquy ensued:

"[The Respondent's Counsel]: Your Honor, I'm going to object. This is hearsay.

"[The Petitioner's Counsel]: I think these are—first of all, I think some of these things have already been said by [Fazzone]. Second, these are conversations between the attorney and client . . . so that . . . [the petitioner] is explaining what he was discussing with his attorney. And this is . . . directly leading into the conversations about the advice regarding his flight.

"[The Respondent's Counsel]: It's still hearsay, Judge. He can ask him what his impression was after their conversations . . . .

"[The Petitioner's Counsel]: I think his impression without knowing what was said—

"The Court: You can ask him what his understanding was—

"[The Respondent's Counsel]: Yeah.

"The Court: —or what he felt about the progress of the trial, [Fazzone's] performance, advice he was given.

"[The Petitioner's Counsel]: Yes, Your Honor. I can phrase it that way."

The petitioner's counsel then proceeded to question the petitioner on his understanding of the advice provided by Fazzone, as aptly chronicled in the majority opinion.[1]

In its subsequent memorandum of decision, the habeas court concluded that the petitioner had not established ineffective assistance of counsel on the part of Fazzone. The petitioner then filed a motion for articulation, in which he sought, inter alia, "articulation of the basis of the court's rulings that prevented [him] from making a record of [Fazzone's] advice to him to flee the jurisdiction." The court granted that motion in part and issued an articulation on December 1, 2023, in which it stated: "[T]he question was objected to on

---

[1] Later in the petitioner's testimony, the petitioner's counsel expressly indicated that he was not claiming the issue of whether the petitioner could offer hearsay testimony as to his conversations with Fazzone:

"[The Petitioner's Counsel]: After the conversation ended, what was your impression of what was happening in the case?

"[The Petitioner]: That it wasn't going well.

"[The Petitioner's Counsel]: Okay. Did you discuss any plans for your future representation?

"[The Petitioner]: Yes.

"[The Petitioner's Counsel]: Okay. What was—what had you discussed at that point?

"[The Petitioner]: We discussed that—[Fazzone] told me that if I left—

"[The Respondent's Counsel]: Objection.

"[The Petitioner's Counsel]: I'll withdraw that. Won't claim that."

hearsay grounds, and that objection was sustained. At no time did [the petitioner's] habeas trial counsel explain that the testimony sought was not for the truth of the matter, as he now claims."[2]

It is well established that "the burden is on the proponent of the evidence, upon timely objection, to establish that the evidence is admissible." *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 753, 680 A.2d 301 (1996); *State* v. *Book*, 155 Conn. App. 560, 575, 109 A.3d 1027, cert. denied, 318 Conn. 901, 122 A.3d 632 (2015), cert. denied, 578 U.S. 977, 136 S. Ct. 2029, 195 L. Ed. 2d 219 (2016). The record before us indicates that the petitioner initially offered the testimony in question without any qualification. The record further confirms that, following the objection by the respondent, the petitioner did *not* argue that the testimony constituted nonhearsay.[3] He likewise did not argue that it was admissible hearsay for any other reason.

---

[2] In its articulation, the habeas court also noted that, after sustaining the respondent's objection, it permitted the petitioner to offer nonhearsay testimony about the advice provided by Fazzone. As it stated: "[T]he court permitted [the petitioner] to testify about what his understanding of the conversation with [Fazzone] was. Typically, evidence that is hearsay, but not offered for the truth of the matter, is offered to show the impact on the listener or to explain any actions taken by the listener. Here, the court permitted [the petitioner] to testify—and he did—about his understanding of what [Fazzone] said to him and what that led him to do. [The petitioner] testified that his 'impression, what I understood from that conversation was that, when I left, the trial would stop, and that would give me a chance to get a new attorney to go back to it, but it would stop. It would be—there wouldn't be anything going on after that.' Shortly thereafter he testified, without objection, that the impression he got from [Fazzone] 'was to leave, get the burner, change the hair, and everything would stop.' " The record before us substantiates those findings.

[3] When a party seeks to admit testimony from a witness regarding conversations with another person, a blanket assertion that the testimony qualifies as nonhearsay does not suffice. Instead, the party must provide a proffer as to how that testimony is relevant to a material issue in the case. As one noted treatise explains: "[I]f a conversation is sought to be admitted not for the truth of its content but to establish that such a conversation took place, it is not hearsay. . . . *Proof of a conversation should never be admitted under this rubric unless the offeror can establish that the mere fact*

Instead, the transcript of the May 3, 2023 proceeding indicates that, when the habeas court stated that the petitioner's counsel could "ask [the petitioner] what his understanding was . . . or what he felt about . . . Fazzone's performance [and the] advice [the petitioner] was given," the petitioner's counsel neither disagreed with that statement nor argued that the petitioner's testimony was admissible nonhearsay. Rather, the petitioner's counsel expressed agreement with the court and then stated, "Yes, Your Honor. I can phrase it that way." As detailed in the majority opinion, the petitioner then proceeded to testify at length on his understanding of the advice provided by Fazzone.

In light of the foregoing, I would conclude that the petitioner failed to establish that the testimony to which the respondent objected was admissible. See *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 753. Because the petitioner did not argue before the habeas court, that his testimony constituted admissible nonhearsay, I respectfully disagree with the majority to the extent that it agrees with the petitioner that "the court's hearsay ruling was erroneous because his testimony as to Fazzone's advice was offered not to prove that what Fazzone told him was true" but, rather, constituted admissible nonhearsay. I am reluctant to ascribe error on the part of a trial judge for failing to overrule a hearsay objection on a basis that

*that the conversation took place is relevant to the case.* . . . Statements and conversations should never be admitted as [nonhearsay] merely on the claim that they are offered only to show they took place without inquiring and being satisfied that that fact is relevant to a material issue in the case." (Citations omitted; emphasis added.) E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 8.6, p. 511. The petitioner did not provide such a proffer in this case. Nevertheless, the petitioner, having acquiesced to the court's invitation to testify as to his "impressions" and their impact on him, proceeded to produce evidence premised on nonhearsay that was relevant to establish a material issue—specifically, that he fled the jurisdiction because of Fazzone's advice.

never was presented to the court at trial. See, e.g., *State* v. *Ortega*, 345 Conn. 220, 255, 284 A.3d 1 (2022) ("to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party" (internal quotation marks omitted)); *Diaz* v. *Commissioner of Correction*, 335 Conn. 53, 58, 225 A.3d 953 (2020) ("[o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court" (internal quotation marks omitted)). In my view, this case does not present any exceptional circumstance warranting departure from that settled precedent.

Far from articulating any basis on which the habeas court could consider whether the testimony in question constituted either nonhearsay or admissible hearsay, the record reflects that the petitioner's counsel acquiesced to the court's decision to sustain the hearsay objection and proceeded to question the petitioner accordingly.[4] In so doing, I believe, the petitioner waived any claim that the court's evidentiary ruling was erroneous. As our Supreme Court has explained, "[i]t is well settled that we review claims alleging an improper evidentiary ruling only if they are distinctly raised at trial. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Citation omitted; internal quotation marks omitted.) *State* v. *Gonzalez*, 315 Conn. 564, 591–92, 109 A.3d 453, cert. denied, 577 U.S. 843, 136 S. Ct. 84, 193 L. Ed. 2d

---

[4] As the majority notes, immediately after the habeas court clarified that the petitioner's counsel was free to "ask [the petitioner] what his understanding was . . . or what he felt about . . . Fazzone's performance [and the] advice [the petitioner] was given," the petitioner's counsel proceeded to question the petitioner on "his impression" of Fazzone's communications, leading to a record replete with testimony recounting the advice that Fazzone provided to him.

73 (2015); see also *State* v. *Wade*, 351 Conn. 745, 758, 333 A.3d 90 (2025) ("[a] defendant cannot pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him" (internal quotation marks omitted)); *In re Aisjaha N.*, 343 Conn. 709, 722, 275 A.3d 1181 (2022) (" '[w]hether we call it induced error, encouraged error, waiver, or abandonment, the result—that the . . . claim is unreviewable—is the same' ").

In addition, I am mindful that, "[i]n Connecticut, our appellate courts do not presume error on the part of the trial court. . . . [T]he burden rests with the appellant to demonstrate reversible error." (Internal quotation marks omitted.) *State* v. *Papineau*, 182 Conn. App. 756, 771–72, 190 A.3d 913, cert. denied, 330 Conn. 916, 193 A.3d 1212 (2018). On the record before us, I would conclude that the petitioner has not met that burden with respect to his claim of evidentiary error.

I would reach that conclusion irrespective of the question of whether the habeas court properly sustained the respondent's objection on hearsay grounds. I agree with the majority that, "contrary to the petitioner's contention, the court did not deprive [him] of the opportunity to prove his claims" and that, following its decision to sustain that objection, the court permitted the petitioner to offer ample testimony regarding his understanding of the advice provided by Fazzone.[5] I,

---

[5] In its memorandum of decision, the habeas court made detailed factual findings predicated on that testimony. As the court stated: "After the second day of trial, [the petitioner and Fazzone] met in the conference room. [Fazzone] told him it wasn't going well and that he was out of his depth. This conversation lasted about half an hour. Based on that conversation, [the petitioner] was left with the impression that, if he fled, the trial would stop and [the petitioner] would have an opportunity to hire alternate counsel. [The petitioner and Fazzone] once again spoke on the courthouse steps when they left the building. [The petitioner] characterized them as one long conversation that continued over two separate locations. Based on the conversation on the steps, [the petitioner] believed that he should flee, get a burner phone and change his hair. [Fazzone] gave [the petitioner] $500-600 on the steps, along with his case file. [The petitioner] understood that

therefore, concur with the conclusion of my colleagues that the petitioner has not demonstrated that a due process violation existed and deprived him of a fair trial, as required under the third prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

---

[Fazzone] gave him the money to have gas money to leave the state. He saw [Fazzone] again over the weekend at his apartment because [Fazzone] had inadvertently given him parts of another client's file and [the petitioner] wanted to return that. After that meeting, [the petitioner] was again left with the impression that it would be better for his case if he left the state. However, he testified that he was aware that [the trial judge] told him to appear in court."