# CONNECTICUT NATIONAL BANK *v.*
# CHARLES A. MARLAND
# (AC 15908)

Dupont, C. J., and Landau and Heiman, Js.

Argued December 16, 1996—officially released June 3, 1997

*John H. Grasso*, for the appellant (named defendant).

*Steven M. Basche*, with whom, on the brief, was *David M. Barry, Jr.*, for the appellee (substitute plaintiff).

*Opinion*

LANDAU, J. The named defendant, Charles A. Marland, appeals from the judgment of strict foreclosure, rendered after a trial to the court. On appeal, the defendant[1] claims that the trial court improperly (1) denied his motion to dismiss, (2) nonsuited the defendant on his counterclaims, (3) found that the plaintiff's successor in interest possessed title to provide standing to enforce the note, and (4) admitted evidence of proof of the debt. We affirm the judgment of the trial court.

On January 6, 1993, Connecticut National Bank (CNB) commenced a foreclosure action against the defendant, seeking to foreclose a mortgage secured by a commercial self-storage facility located in Old Saybrook. At the same time, CNB commenced a separate action against the defendant involving the foreclosure of a separate commercial property.

---

[1] Shortly after the plaintiff, Connecticut National Bank, filed this action against the defendant, Charles A. Marland, Charles A. Marland quitclaimed his interest in the property to his wife, Susan Marland. On February 22, 1993, the trial court granted Susan Marland's motion to be made a party defendant. Susan Marland is not, however, a party to this appeal. We refer in this opinion to Charles Marland as the defendant.

On February 18, 1994, Cadle Company of Connecticut, Inc. (Cadle), purchased the mortgage and other loan documents executed in connection therewith from Shawmut Bank, N.A., successor in interest to CNB. On March 17, 1994, the action was dismissed pursuant to Practice Book § 251.[2] On July 13, 1994, Cadle filed a motion to open the § 251 dismissal and motions to substitute itself as the party plaintiff and to amend the complaint. The trial court granted Cadle's motion to open on August 15, 1994, and also granted its motion to substitute on August 16, 1994.

On September 23, 1994, Cadle requested that the defendant revise his special defenses and counterclaims. The defendant failed to comply, and on December 21, 1994, Cadle moved for default, and the trial court granted its motion on January 17, 1995.[3]

After Cadle's motion for default against the defendant was granted, Cadle pursued the action against Susan Marland, which was scheduled for trial on October 3, 1995. On that date, the defendant filed a motion to dismiss, a motion to strike from the trial list and, in addition, filed proposed counterclaims. The defendant also filed on October 20, 1995, a motion to set aside the default entered against him on January 17, 1995. The trial court denied those motions on October 25, 1995. Cadle amended its complaint on October 27, 1995, to reflect the interest of Susan Marland.[4] Subsequently, she responded to Cadle's demand for defenses by filing an answer and four special defenses that essentially

[2] Practice Book § 251 provides in pertinent part: "If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196, or on its own motion, render a judgment dismissing the action with costs. . . ."

[3] In June, 1995, both cases, docket numbers CV95-0249405 and CV95-0249406, were transferred to the Judicial District of New Haven at Meriden. During trial, the court decided to resolve CV95-0249405 and reserve decision on CV95-0249406. This appeal is taken from the judgment in CV95-0249405.

[4] See footnote 1.

involved claims of laches and bad faith. Cadle denied these special defenses.

Following the trial in December, 1995, the trial court rendered judgment of strict foreclosure against Charles A. Marland and Susan Marland. The trial court found the fair market value of the property to be $561,000 and exercised its equitable discretion to limit the debt to $534,803.56, the principal balance due on the loan at the time Cadle acquired this note and mortgage. This appeal followed.

## I

The defendant first argues that the trial court improperly denied his motion to dismiss. He asserts that the trial court lacked jurisdiction to open the judgment because the motion was not timely filed, that Cadle was not a party to the action when it filed its motion to open, and that the substitution of Cadle as the sole party plaintiff was improper because the judgment of dismissal had not been opened. We address these arguments in turn.

Practice Book § 326 provides in part that "any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is *filed* within four months of the entry of judgment." (Emphasis added.) See also General Statutes § 52-212a. Notwithstanding a few exceptions not applicable to this case, it is well recognized that where a motion to open a judgment is filed more than four months from the date of the judgment, the trial court lacks jurisdiction to open the judgment. *Citicorp Mortgage, Inc.* v. *Tarro*, 37 Conn. App. 56, 59, 654 A.2d 1238 (1995). Here, the trial court dismissed the action, pursuant to Practice Book § 251, on March 17, 1994. Cadle filed a motion to open the § 251 dismissal on July 13, 1994, which was granted on August 15, 1994. Therefore, the trial court had jurisdiction to open the

judgment because the plaintiff filed the motion to open within four months following the date of judgment.

The defendant next argues that Cadle was not a party to the action at the time it filed its motion to open. In *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.*, 31 Conn. App. 80, 623 A.2d 517, cert. denied, 226 Conn. 908, 625 A.2d 1378 (1993), we addressed an analogous situation involving the filing of a motion for a deficiency judgment. In that case, the trial court rendered judgment of strict foreclosure in favor of the Federal Deposit Insurance Corporation (FDIC), the receiver for the Connecticut Bank and Trust Company, N.A. Subsequently, the FDIC filed a motion to substitute the New Connecticut Bank and Trust Company, N.A. (New CBT), the assignee of FDIC, as the plaintiff. Prior to the trial court's ruling on the FDIC's motion to substitute, the New CBT filed a motion for deficiency judgment. The defendants argued that because a motion for a deficiency judgment was filed by the New CBT prior to its becoming a party to the proceedings, no party to the proceedings had sought a deficiency judgment within the allotted thirty days and, therefore, the trial court lacked authority to grant a deficiency judgment in that action. We concluded that "an amendment substituting a new plaintiff [will] relate back if the added plaintiff is the real party in interest." Id., 85, quoting 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1501, pp. 154–57.

Here, Cadle's motion to substitute itself as party plaintiff was filed simultaneously with its motion to open the § 251 dismissal. We conclude that the motion to substitute, granted on August 16, 1994, related back in time to affect the July 13, 1994 motion to open and that Cadle, at the time of filing its motion to open and motion to substitute, was a real party in interest. As a result, the motion to open is deemed to have been properly and timely filed by Cadle. See *Federal Deposit*

*Ins. Corp.* v. *Retirement Management Group, Inc.*, supra, 31 Conn. App. 85.[5]

## II

The defendant next claims that the trial court improperly rendered judgment of nonsuit against him on his counterclaims and barred him from filing any responsive pleadings as to Cadle's second amended complaint filed October 27, 1995. He argues that the pleadings remained open due to Cadle's failure to move for a nonsuit on his counterclaims. Cadle argues that it is evident from its motion for default that it sought to preclude the defendant from proceeding further on both his special defenses and counterclaims. We agree.

On December 21, 1994, Cadle filed a motion for default against the defendant for his failure to comply with Cadle's request to revise the defendant's special defenses and counterclaims.[6] The trial court granted Cadle's motion for default on January 17, 1995. On October 3, 1995, the defendant filed a motion to strike the case from the trial list, arguing that the pleadings were not closed because Cadle had failed to respond to his

---

[5] The defendant also argues, relying on *Joblin* v. *Labow*, 33 Conn. App. 365, 367, 635 A.2d 874 (1993), cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994), that the trial court improperly substituted Cadle as the party plaintiff without first opening the judgment. Because of our conclusion that Cadle's motion to open was timely filed by a proper party, this claim is moot.

[6] Cadle's motion for default for failure to comply with Practice Book § 147 provides: "Pursuant to P.B. § 363, The Plaintiff, The Cadle Company of Connecticut, Inc., hereby moves that a default be entered against the defendant, Charles A. Marland, for his failure to file a revised special defense and counterclaim as required under P.B. § 147 within the period specified in P.B. § 149. In support thereof, the plaintiff hereby represents as follows:

"1. On September 23, 1994, the plaintiff filed a request to revise defendant's special defense and counterclaim dated January 26, 1993.

"2. Defendant has not filed an objection to said request to revise, nor was the request complied with by defendant within thirty days of the date of the filing said request to revise.

"3. Defendant is therefore in default by reason of failure to comply with P.B. § 149, and a default may be entered pursuant to P.B. § 363."

counterclaims. At a hearing on October 25, 1995, the trial court denied the defendant's motion to strike the case from the trial list and, in turn, rejected his claim that the pleadings remained open. We conclude that it is implicit in Cadle's motion for default that it sought to default the defendant on his special defenses and to nonsuit him on his counterclaims. To conclude otherwise would be to elevate form over substance. *Whalen* v. *Ives*, 37 Conn. App. 7, 15–17, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995).[7]

### III

The defendant next argues that the trial court improperly found that Cadle possessed title to provide standing to enforce the note. The defendant argues that due to technical defects in the chain of title to the mortgage, Cadle does not have good title to the mortgage. Cadle contends that the technical defects are not fatal because there is sufficient information in the land records to establish the chain of title from the original mortgagee to Cadle. We agree with Cadle.

On January 6, 1993, CNB commenced this foreclosure action against the defendant. On January 13, 1993, Shawmut Bank Connecticut, N.A. (Shawmut), filed a certificate of name change dated January 11, 1993, indicating that CNB had changed its corporate name to Shawmut. On January 27, 1993, Shawmut assigned its interest in the mortgage and the note to GTT Corporation, as trustee of Onyx Properties Realty Trust (GTT). On February 18, 1994, GTT assigned its interest in the mortgage and the note to Cadle. On the same day, Cadle, pursuant to an agreement with Shawmut for the pur-

---

[7] The defendant's claim that the trial court improperly precluded him from filing any responsive pleadings as to Cadle's second amended complaint is without merit. The defendant was defaulted from the case. Practice Book § 363. The trial court did, however, permit the defendant the opportunity to file responsive pleadings to the second amended complaint, but limited those pleadings to the amended portions.

chase and sale of notes and loan documents, purchased a package of notes and loan documents, which included any remaining interest Shawmut may have had in the two Marland loans.

The trial court, after reviewing the chain of title set forth above, found that Cadle is the owner and holder of the note evidencing the debt and the mortgage securing the debt and, thus, has the appropriate standing to proceed with this action. "Under familiar principles of appellate review, a trial court's factual finding will not be reversed or modified unless it is clearly erroneous in view of the evidence and pleadings in the whole record. Practice Book § 4061 . . . ." (Citations omitted; internal quotation marks omitted.) *Capital Consulting Group, Ltd.* v. *Rochman*, 218 Conn. 396, 401, 589 A.2d 877 (1991), quoting *DiBella* v. *Widlitz*, 207 Conn. 194, 198, 541 A.2d 91 (1988). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo." (Internal quotation marks omitted.) *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985). On the basis of our review of the record, we conclude that the trial court's finding that Cadle is the owner and holder of the note and mortgage is not clearly erroneous.[8]

---

[8] The defendant also argues that due to the claimed improper assignments of the note, that Cadle was never in possession of the note and, therefore, could not enforce the note against the defendant. Cadle maintains, however, that this is an equitable action to foreclose a mortgage, not a legal action on the note, and that the enforceability of the note is only of consequence in a subsequent deficiency motion.

The issue of whether a mortgagee must have possession of a note in order to bring a foreclosure action on the mortgage was recently addressed by our Supreme Court in *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 680 A.2d 301 (1996). In that case, the court, after stating that

## IV

The defendant finally claims that the trial court improperly admitted an agreement for purchase and sale of notes and loan documents (agreement), and, in particular, schedule A, which described the notes, and the testimony of James T. Hoffman, vice president of Cadle, and Douglas Manero, an employee of Shawmut who coordinates the bulk sale of notes, as proof of the debt. Cadle argues that schedule A of the agreement is a document used in Shawmut's ordinary course of business and, therefore, it is trustworthy.

It is well established that a "trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citations omitted; internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 752, 680 A.2d 301 (1996).

The trial court admitted evidence of the amount of the debt over the defendant's objection that Cadle had not qualified it as a business record under the business records exception to the hearsay rule. General Statutes § 52-180. Section "52-180 permits hearsay evidence to be admitted if (1) this writing was made in the regular course of business, (2) it was the regular course of the business to make such a writing, and (3) the writing was made at the time of the transaction or occurrence

an action for foreclosure of a mortgage and on the note are separate and distinct causes of action, concluded that because the plaintiff chose to pursue the equitable action of foreclosure of the mortgage, rather than a legal action on the note, the fact that the plaintiff never possessed the note is not fatal to its foreclosure of the mortgage. Id., 759–60. Because Cadle brought an equitable action to foreclose the mortgage, the issue of possession of the note is of no consequence to this case. As a result, the defendant's claim lacks merit.

or within a reasonable time thereof. *State* v. *Scott*, 31 Conn. App. 660, 665, 626 A.2d 817 (1993). To qualify a document as a business record, the party offering it must present a witness who testifies that these three requirements have been met. *State* v. *Lawler*, 30 Conn. App. 827, 831–32, 622 A.2d 1040 (1993). The trial court has discretion to determine whether the statute is satisfied and appellate courts must construe the statute liberally when reviewing abuse of discretion. *State* v. *Scott*, supra; *State* v. *Lawler*, supra." *Connecticut Bank & Trust Co., N.A.* v. *Reckert*, 33 Conn. App. 702, 709–10, 638 A.2d 44 (1994).

All three of the criteria enumerated in § 52-180 have been satisfied in this case. Manero testified that it was in the normal course of business for Shawmut to package loans for sale and for the in-house legal department to prepare agreements for the purchase and sale of notes and loan documents, including relevant schedules attached thereto. Manero further testified that he had personal knowledge of the contents of schedule A because he obtained the information from Shawmut's commercial loan system for approximately two thirds of the loans in that package, including the two Marland loans. Manero also testified that the agreement was prepared at the time of the loan sale. Finally, Nick Madinsky, a financial information systems specialist with Shawmut, testified as to the accuracy of Shawmut's computer records. We conclude that the trial court properly admitted the agreement and Manero's testimony concerning the amount of the outstanding debt.[9]

---

[9] Because we conclude, on the basis of Manero's testimony, that the agreement was properly admitted under the business records exception to the hearsay rule, we need not decide whether Hoffman's testimony was properly admitted by the trial court to establish the amount of the debt. The amount of the debt having already been established, Hoffman's testimony was merely cumulative.

The judgment is affirmed and the case is remanded for the purpose of setting new law days

In this opinion the other judges concurred.