ESSEX SAVINGS BANK *v.* CHARLES A.
MARLAND ET AL.
(AC 18698)

Schaller, Spear and Hennessy, Js.

Argued March 18—officially released November 9, 1999

*Patrick W. Boatman,* with whom, on the brief, was *John H. Grasso,* for the appellant (named defendant).

*Steven M. Basche,* for the appellee (defendant Cadle Company of Connecticut, Inc.).

*Opinion*

SPEAR, J. The named defendant, Charles A. Marland (Marland), appeals from the judgment of the trial court ordering that the proceeds from a foreclosure sale, in excess of the first mortgage debt and expenses, be paid to the second mortgagee, the Cadle Company of Connecticut, Inc. (Cadle). Cadle had purchased the subject property at the sale. Marland claims that the court improperly (1) allowed Cadle to apply the sale proceeds to its second mortgage debt without holding an evidentiary hearing on the issue of whether Cadle ever possessed the note evidencing the debt, (2) refused to allow evidence of the fair market value of the property at the time that the purchaser acquired title and (3) refused to apply the doctrine of equitable appropriation to extinguish the second mortgage debt. We reject these claims and affirm the judgment of the trial court.

The relevant facts and procedural history are as follows. The plaintiff, Essex Savings Bank, instituted the underlying foreclosure action against property owned by Charles A. Marland and Lorraine M. Marland. The plaintiff alleged that Cadle had an interest in the premises as assignee of a second mortgage. Summary judgment was rendered as to liability in favor of the plaintiff in accordance with an agreement between the plaintiff and Marland. Thereafter, the court ordered a foreclosure by sale. Cadle made a successful bid for the property in the amount of $260,000. The plaintiff was paid in full, and the balance of $104,000 was deposited with the court.

Marland and Cadle each claimed the balance of the proceeds by motions for supplemental judgment. The court granted Cadle's motion, ruling that Cadle's status as the successful bidder was of no moment in determining the question of who was entitled to the balance of the proceeds of the sale. The court found that "as a subsequent encumbrancer, [Cadle] is entitled to the balance of the sale proceeds. The amount of Marland's debt to Cadle exceeds the balance of the sale proceeds." Accordingly, the court denied Marland's motion and granted Cadle's motion for supplemental judgment. This appeal followed.

I

Marland's first claim is based on the dismissal of his appeal from an earlier judgment of foreclosure that was rendered in favor of Cadle on its second mortgage.[1] Marland argues that although the court found that Cadle was entitled to enforce its second mortgage, the dismissal of Marland's appeal as moot because of the sale leaves unadjudicated the issue of the validity of Cadle's second mortgage. Marland asserts that an evidentiary hearing on the competing motions for supplemental judgment was necessary to resolve this question.

The sole claim that Marland makes in support of his contention that Cadle's mortgage is unenforceable is that Cadle, an assignee, has never been in possession of the note that evidences the underlying debt that the mortgage secures. Marland asserts that the court's finding in *Connecticut National Bank* v. *Marland*,

---

[1] *Connecticut National Bank* v. *Marland*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV 95-02494065 (October 29, 1996), was an action brought by Cadle to foreclose its second mortgage. The court rendered judgment in favor of Cadle, and Marland appealed to this court. *Connecticut National Bank* v. *Marland*, 45 Conn. App. 352, 696 A.2d 374, cert. denied, 243 Conn. 907, 701 A.2d 328 (1997). We dismissed the appeal as moot after the sale to Cadle that is the subject of this appeal.

Superior Court, judicial district of New Haven at Meriden, Docket No. CV 95-02494065 (October 29, 1996),[2] that Cadle's mortgage was a valid encumbrance cannot be given preclusive effect pursuant to the doctrine of res judicata because we dismissed Marland's appeal of that judgment as moot. "Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits." (Internal quotation marks omitted.) *Krondes* v. *Norwalk Savings Society*, 53 Conn. App. 102, 119, 728 A.2d 1103 (1999). We conclude that Marland's claim was properly precluded.

*New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 680 A.2d 301 (1996), is dispositive of this claim. Although Cadle's foreclosure action was tried before *Bedford Realty Corp.* was decided, the trial court's judgment was rendered approximately two and one-half months after the *Bedford Realty Corp.* decision. In *Bedford Realty Corp.*, our Supreme Court held that when a mortgagee "has chosen to pursue the equitable action of foreclosure of the mortgage, rather than a legal action on the note, the fact that [the mortgagee] never possessed the lost promissory note is not fatal to its foreclosure of the mortgage." Id., 759–60. Marland's appeal on this ground could not have been successful. Therefore, the dismissal of his appeal does not prevent the application of res judicata.

Alternatively, Marland argues that because *Bedford Realty Corp.* implies that there could have been a different result had the creditor sued on the note or pursued a deficiency judgment, he is entitled to relitigate the note issue. This is so, he asserts, because the issue is presented here in a context different from the earlier foreclosure. We are not persuaded.

Here, Cadle is not suing on the note or pursuing a deficiency judgment. Moreover, Marland agreed to a

[2] See footnote 1.

summary judgment as to his liability on the first mortgage and, prior to filing his motion for supplemental judgment, took no action by way of a cross complaint or otherwise with respect to Cadle's status as a subsequent encumbrancer. We conclude that the court properly gave preclusive effect to the earlier trial court decision that Cadle's mortgage was valid and, therefore, properly declined to take evidence on that issue.

## II

The defendant next claims that because the $260,000 purchase price of the property at the foreclosure sale was substantially less than its fair market value,[3] he should have been allowed to introduce evidence of the fair market value prior to the court's decision on the motions for supplemental judgment. The same question was raised and decided in *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 630 A.2d 1010 (1993) (en banc).

Although in *Lopez* the defendant attacked the constitutionality of the deficiency judgment procedure where a foreclosure by sale had been ordered, the rationale of that case applies equally to the circumstances here. Our Supreme Court stated in *Lopez* that the defendants' argument "rests on the premise that, as a matter of constitutional law, a deficiency judgment must be calculated, not by subtracting the amount of the sale proceeds from the amount of the debt, but by subtracting the fair market value of the property from the amount of the debt. Their premise is unsound." Id., 276. In rejecting the defendants' claim, the court stated: "We can find no basis, however, in our state law or understandings regarding foreclosure by sale for the proposition that a debtor is legally entitled to a credit for the fair market value of the property sold. A debtor's legal entitlement is, instead, to a credit for the amount of

---

[3] The defendant claims that Cadle had an appraisal for substantially higher than $260,000, which it used in its own foreclosure action.

the sale proceeds. While an evidentiary hearing is required to determine the value of the mortgaged property and thus the amount of any deficiency following a strict foreclosure, such a valuation would be superfluous following a foreclosure by sale. In the latter action the price realized upon the sale of the property fixes the amount for which a deficiency may be entered pursuant to General Statutes § 49-28. . . . The deficiency is determined by subtracting the sale proceeds from the amount of the debt." (Citations omitted; internal quotation marks omitted.) Id., 277–78.

The court stated its rationale as follows: "Indeed, the usual notion of fair market value is inconsistent with the notion of a foreclosure sale. [F]air market value is generally said to be the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal. . . . An auction sale, such as a foreclosure sale, is not designed to reach that result because there is no opportunity for negotiations, and the seller, namely, the committee appointed by the trial court to conduct the sale, *is* under compulsion to make a deal, in the sense that it is required to take the highest bid, subject only to the approval of the court.

"Moreover, the traditional definition of fair market value implies a seller who is willing to entertain offers, and either rejects them or makes counteroffers and negotiates. That, in turn, implies the willingness to take time to sell, in order to see what the market will bring, and that willingness, in turn, implies a seller willing to take the risk of the market going down. Similarly, a desirous buyer who offers less than what the seller asks takes the risk of the market going up and of another desirous buyer making a higher offer. Neither of these scenarios fits the paradigm of the foreclosure sale, in which there is no asking price, no offer and counteroffer, and no opportunity for the parties to incur the

respective market risks." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 280–81.

Except for the constitutional aspects, Marland's claim is the same as that of the defendants in *Lopez*, i.e., that the owner of the equity is entitled to a credit based on the fair market value of property sold at a foreclosure sale rather than on the sale price. Applying the *Lopez* reasoning in this case leads us to conclude that Marland is not entitled to apply the fair market value of the property against the debt.

Marland argues that because this is not a deficiency proceeding such as in *Lopez*, we may properly adopt the views of the two dissenting justices in *Lopez*. Those justices wrote that where a foreclosure by sale is ordered, the debtor ought to be entitled to a credit for the fair market value of the property rather than the auction price. Id., 286–300 (*Berdon, J.*, and *Katz, J.*, dissenting). We feel constrained to apply the majority's reasoning in *Lopez* because our Supreme Court has made it clear that in the context of a foreclosure by sale, the "fair market value" concept does not apply. Therefore, we must reject Marland's claim.

### III

Marland's last claim is that the property had a value substantially higher than the $260,000 that Cadle bid at the foreclosure sale and, because the first mortgage and expenses have now been paid, Cadle has been made more than whole. Marland argues that the excess proceeds should go to him pursuant to the doctrine of equitable appropriation. This claim also is without merit.

The defendant relies on *Bassett* v. *Mason*, 18 Conn. 131 (1846), as well as the dissenting opinions in *New England Savings Bank* v. *Lopez*, supra, 227 Conn. 286–

300, for the proposition that equitable appropriation requires that the proceeds be distributed to him. In *Bassett*, the doctrine of equitable appropriation was applied because after the defendant, the second mortgagee, foreclosed, he acquired the first mortgage and then brought suit on the note underlying the first mortgage. *Bassett* v. *Mason*, supra, 136–37. Our Supreme Court concluded that the defendant's interest as a mortgagee merged with his interest as the owner of the equity of redemption, and the first mortgage debt was thereby satisfied and canceled. Id., 137.

Here, no such equitable considerations exist. The court found that after paying the first mortgage debt and the expenses, the balance was not sufficient to pay the balance of Cadle's mortgage. Cadle is not in the position of the second mortgagee in *Bassett* because it is not attempting personally to collect on the first mortgage debt in addition to acquiring the title to the property.

The linchpin of Marland's argument is his claim that the fair market value of the property is substantially higher than the $260,000 that Cadle paid. Our rejection of Marland's fair market value claim in part II of this opinion applies to this claim as well.

The judgment is affirmed.

In this opinion the other judges concurred.